## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

NATIONAL ASSOCIATION OF TOBACCO
OUTLETS, INC.; CIGAR ASSOCIATION OF
AMERICA, INC.; LORILLARD TOBACCO
COMPANY; R.J. REYNOLDS TOBACCO
COMPANY; AMERICAN SNUFF
COMPANY; PHILIP MORRIS USA INC.;
U.S. SMOKELESS TOBACCO
MANUFACTURING COMPANY LLC; U.S.
SMOKELESS TOBACCO BRANDS INC.;
JOHN MIDDLETON COMPANY,

                Plaintiffs,

     v.                          C.A. No. 12-96-ML

CITY OF PROVIDENCE, Rhode Island;
PROVIDENCE BOARD OF LICENSES;
PROVIDENCE POLICE DEPARTMENT;
MICHAEL A. SOLOMON, Providence City
Council President, in his official capacity;
STEVEN M. PARE, Commissioner of Public
Safety for the City of Providence, in his
official capacity; ANGEL TAVERAS, Mayor
of Providence, in his official capacity,

                Defendants.

### MEMORANDUM AND ORDER

Mary M. Lisi, Chief United States District Judge.

The plaintiffs in this case (the "Plaintiffs") are (1) the
National Association of Tobacco Outlets, Inc. ("NATO"), a
nationwide association of tobacco retailers, manufacturers and
distributors; (2) the Cigar Association of America, Inc. ("CAA"),
a nationwide association of cigar manufacturers, distributors and
importers; and (3) seven tobacco manufacturers and distributors,
including Lorillard Tobacco Company ("Lorillard"), R.J. Reynolds
Tobacco Company ("RJRT"), American Snuff Company ("ASC"), Philip

Morris USA Inc. ("PM USA"), U.S. Smokeless Tobacco Manufacturing Company LLC ("USSTMC"), U.S. Smokeless Tobacco Brands, Inc. ("USSTB") and the John Middleton Company ("JMC").

The Plaintiffs seek a declaration that two new provisions[1] added to Providence municipal ordinances are unconstitutional and they seek a permanent injunction against the City's enforcement of those provisions. Complaint 51-52 (Docket # 1). The case is before the Court on the Plaintiffs' joint motions for summary judgment, a permanent injunction, and a preliminary injunction (Docket # 32) and the City's cross motion for summary judgment. (Docket # 44). Although the Plaintiffs have styled their request for relief in the form of a motion for summary judgment, the Court understands that the parties are seeking a decision on the merits. The City has agreed to stay enforcement of the provisions at issue until after the Court has ruled on the parties' motions.

## I. Factual Background and Procedural History

On January 5, 2012,[2] the Providence City Council, motivated by concerns about smoking and health in the City of Providence, amended existing Sections 14-300 and 14-303 (the "Price Ordinance") and enacted Sections 14-308, 14-309, and 14-310 (the "Flavor" Ordinance, together with the Price Ordinance, the "Ordinances").

---

[1]

The provisions are set forth in their entirety in Appendices I and II of this Memorandum and Order.

[2]

The Ordinances were subsequently re-enacted on February 17, 2012, in order to cure any violation of the Rhode Island Open Meetings Act ("OMA").

The Ordinances were designed, in part, to reduce tobacco consumption by persons under the age of eighteen.[3] PSUF ¶¶ 2, 3.

According to the Complaint, the Plaintiffs (with the exception of Lorillard, which does not sell "flavored tobacco products") sell products and "advertise them and promote them in ways that would be prohibited by both ordinances." Complaint 2.  Lorillard takes exception only to Section 14-303. Both Ordinances were to take effect on March 1, 2012; however, in light of the pending litigation, neither has been enforced thus far.

On February 13, 2012, the Plaintiffs filed a 56-page complaint (the "Complaint") against the City. (Docket # 1). The Plaintiffs asserted claims of violation of Plaintiffs' First Amendment rights (Counts I and VII)[4], Federal Law Preemption (Counts II and IX), Deprivation of Civil Rights pursuant to 42 U.S.C. § 1983 (Counts III and X), Violation of the Rhode Island Constitution (Counts IV and XI), Preemption by Rhode Island Law (Count V), Violation of the Rhode Island Open Meetings Act (Counts VI and XII), and Violation of Plaintiffs' Due Process Rights pursuant to the Fourteenth Amendment (Count VIII). Docket # 1. The Plaintiffs sought a declaration from the Court that the Ordinances were unconstitutional and preempted by Federal and state law and,

---

[3]

The Ordinances make no specific reference to underage consumers.

[4]

Counts I, II, III, IV, V, and VI pertain to the Price Ordinance, Counts VII, VIII, IX, X, XI, and XII pertain to the Flavor Ordinance.

therefore, of no force. Complaint 51. They also sought a temporary
restraining order and preliminary injunction to enjoin the City
from enforcing the Ordinances pending final resolution of this
litigation, id. at 52, as well as attorney fees pursuant to 42
U.S.C. § 1988 and R.I. Gen. Laws § 42-46-8(d).

On February 17, 2012, the parties filed a stipulation staying
enforcement of the Ordinances until July 30, 2012. (Docket # 23).
On the same day, the Providence City Council reenacted the
Ordinances at a hearing for which forty-eight hours' notice had
been given as required by the OMA. Pltfs.' Mem. 9. On February 21,
2012, the Court entered the parties' stipulation, Text Order
02/21/2012 (Docket # 23).

On March 15, 2012, the City filed an answer to the Complaint
in which it generally denied that the Ordinances were
unconstitutional or preempted, but acknowledged that the City
Council "inadvertently committed a technical violation of the Open
Meetings Act," when the Ordinances were passed. Answer at 3 ¶ 10.
(Docket # 30). However, the City denied that the Ordinances were,
as the Plaintiffs alleged, "null and void" as a result, because any
such violation had been subsequently cured when the City Council
passed the Ordinances, as amended, on or about February 17, 2012,
and when they were signed by the Mayor on February 20, 2012. Id. at
3, ¶10.

On March 30, 2012, the Plaintiffs filed a joint motion for
summary judgment and for a permanent injunction. (Docket # 32),
together with the Declaration of Cecil R. Reynolds, Ph.D.

-4-

("Reynolds"), (Docket # 33), a Statement of Undisputed Facts ("PSUF"), (Docket # 34), and a Memorandum in support of their motion, (Docket # 35). On April 16, 2012, the Rhode Island Department of Behavioral Healthcare, Developmental Disabilities and Hospitals, the Rhode Island Department of Health, the Tobacco Control Legal Consortium and various health care and/or health research organizations (together, the "amici") filed a joint motion for leave to file amicus briefs, (Docket # 37), which was granted by the Court. Text Order 06/14/2012. The parties also agreed by amended stipulation that enforcement of the Ordinances would be stayed until October 15, 2012, (Docket # 39).

On June 15, 2012, the City filed its response in Opposition to the Plaintiffs' motion, (Docket # 42), together with a cross motion for summary judgment, (Docket # 44), a Statement of Disputed Facts ("DSDF"), (Docket # 43), and a Statement of Undisputed Facts ("DSUF"), (Docket # 45).

The Plaintiffs filed a reply to the City's response on July 16, 2012, (Docket # 49), together with a response in opposition to the City's motion, (Docket # 50), a Statement of Disputed Facts ("PSDF"), (Docket # 51), and a further declaration by Reynolds, (Docket # 52). In reply, the City filed a memorandum on July 30, 2012, (Docket # 55).

On August 22, 2012, the Court held a hearing at which the parties and one of the amici were given an opportunity to argue their respective positions and address questions posed to them by the Court. The Court then took the motions under advisement. Minute

-5-

Entry 08/22/2012. Following the hearing, the Court entered a further stipulation by the parties that stayed enforcement of the Ordinances until the later of October 15, 2012 or fourteen days following the Court's ruling on the pending motions. Text Order 09/13/2012 (Docket # 56).

## II. Standard of Review

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted). "A fact is material if it has the potential of determining the outcome of the litigation." Id. (quoting Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The party seeking summary judgment bears the burden of establishing the lack of a genuine issue of material fact. Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). Once such requisite showing has been made, "the opposing party can then defeat the motion by showing that there is a genuine issue of material fact." Rivera-Colon v. Mills, 635 F.3d 9, 12 (1st Cir. 2011). "Summary judgment is not appropriate where 'the evidence on the record is sufficiently open-ended to permit a rational fact finder to resolve

-6-

the issue in favor of either side.'" <u>Perez-Cordero v. Wal-Mart</u>
<u>Puerto Rico, Inc.</u>, 656 F.3d 19, 25 (1st Cir. 2011)(internal
citation omitted). The Court, in considering a motion for summary
judgment, "read[s] the record in the light most favorable to the
non-moving party, drawing all reasonable inferences in its favor."
<u>Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and</u>
<u>Guar. Co.</u>, 143 F.3d at 7 (citing <u>Reich v. John Alden Life Ins. Co.</u>,
126 F.3d 1, 6 (1st Cir. 1997)).

The fact that cross motions for summary judgment have been
filed "'neither dilutes nor distorts this standard of review.'"
<u>Scottsdale Ins. Co. v. Torres</u>, 561 F.3d 74, 77 (1st Cir.
2009)(quoting <u>Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co.</u>, 486
F.3d 727, 732 (1st Cir. 2007)). Instead, "'[c]ross motions simply
require [the court] to determine whether either of the parties
deserves judgment as a matter of law on facts that are not
disputed.'" <u>Scottsdale Ins. Co. v. Torres</u>, 561 F.3d at 77 (quoting
<u>Littlefield v. Acadia Ins. Co.</u>, 392 F.3d 1, 6 (1st Cir. 2004));
<u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997)
("When deciding cross-motions for summary judgment, the court must
consider each motion separately, drawing inferences against each
movant in turn.").

### III. Discussion

The parties' respective positions with regard to the two
Ordinances at issue in this litigation are reflected in the labels
they have attached to them. The Plaintiffs, who take the position
that Section 14-303 limits "their ability to communicate pricing

information," refer to it as the "Promotion Ordinance." Complaint
3. The City, countering that Section 14-303 "regulates the sale
and/or distribution of price-discounted tobacco products," refers
to it as the "Price Ordinance." Def.'s Mem. 1 (Docket # 44-1). With
respect to Sections 14-308 and 14-309, the Plaintiffs allege that,
under the "Flavor Description Ordinance," manufacturers and
retailers "are prohibited from describing the taste or aroma of
certain tobacco products to consumers;" whereas the City argues
that the "Flavored Tobacco Ordinance" only "regulates the sale of
certain flavored and smokeless tobacco products." Def.'s Mem. 1-2.
For ease of reading, the Court will refer to the Ordinances as the
"Price" and the "Flavor" Ordinance.

### (A)   Violation of Plaintiffs' First Amendment Rights

#### (Counts I and VII)

With respect to the Price Ordinance, the Plaintiffs asserted
in their Complaint that the "ban on the use of coupons and certain
promotion discounts for cigarettes and other tobacco products
restricts communication with adult tobacco consumers about the
price of tobacco products" and, therefore, is protected as
"commercial speech." Complaint 38. The Plaintiffs further suggest
that, by prohibiting retailers from accepting or redeeming coupons
or providing multi-pack discounts, the Price Ordinance "regulates
*what is said* about prices." Pltfs.' Mem. 11 (emphasis in
original).

Regarding Section 14-308 of the Flavor Ordinance, the

Plaintiffs alleged that the "ban on many public statements referencing an open-ended series of 'tastes', 'aromas,' or 'concepts' in describing non-cigarette tobacco products violates" the First and Fourteenth Amendments. Complaint 44. In their memorandum, the Plaintiffs argue that (1) the prohibition of the Flavor Ordinance is "triggered" by speech because it provides that a "public statement or claim . . . shall constitute presumptive evidence that the tobacco product is a flavored tobacco product," essentially banning a product because of what is said about it; and (2) Section 14-308 of the Flavor Ordinance prohibits reference to a non-exclusive list of concepts even if such concepts apply to an underlying product that is "seemingly exempt." Pltfs.' Mem. 26-27.

In their supporting memorandum and at the August 22, 2012 hearing, the Plaintiffs suggested that the four-prong test of Central Hudson[5] provides the applicable standard for determining whether Section 14-303 and/or Sections 14-308 - 309 are violative of the First Amendment. Pltfs's Mem. 11-17, 26-30.

In response, the City took the position that neither Ordinance at issue concerns speech or expressive conduct protected by the First Amendment. City Mem. 30. The City pointed out that the plain language of Section 14-303 regulates the commercial activity of a tobacco retailer in Providence and does not preclude the Plaintiffs from disseminating coupons or multi-pack offers; instead, it merely

---

[5]

Cent. Hudson Gas & Elect. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

prohibits the redemption of such price reduction means in the City. City Mem. 31. With respect to the Flavor Ordinance, the City noted that the Plaintiffs' argument is primarily based on the definitions in Section 14-308, whereas the actual prohibition in Section 14-309 only makes the sale of flavored tobacco products unlawful (unless the sale occurs in a smoking bar). City Mem. 31. The City also stated that, notwithstanding the statement in Section 14-308 that a claim by the manufacturer of a tobacco product that such a product "has or produces a characterizing flavor shall constitute presumptive evidence" that such product is a flavored tobacco product, this provision does not preclude the Plaintiffs' communications regarding their flavored tobacco products. City Mem. 33. Because both Ordinances limit only specific commercial activities - the local sale and distribution of certain tobacco products - neither speech nor expressive conduct is implicated. Id. 3. The City also suggested that, even if the Court were to apply the O'Brien[6] test applicable to expressive conduct protected by the First Amendment, the Ordinances advance a compelling state interest.

The Plaintiffs' contention that the Ordinances take aim at "commercial speech" and, therefore, such speech should be afforded protection under the First Amendment, is undermined by the plain language of the Ordinances. It is well-established law that

---

[6]

   United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

commercial speech, including truthful advertising "is entitled to a measure of protection under the First Amendment." Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 48-49 (1st Cir. 2005)(listing cases). As the Plaintiffs correctly point out, truthful, nonmisleading, commercial information including accurate price information is protected by the First Amendment as commercial speech. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 496, 116 S.Ct. 1495, 1505, 134 L.Ed.2d 711 (1996) (noting that "[a]dvertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price.") The Plaintiffs fail, however, to establish that the practice of reducing the price of cigarettes and tobacco products through coupons and multi-pack discounts is subject to constitutional protection. See Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d at 49 (noting that "it is the duty of the party seeking to engage in allegedly expressive conduct to demonstrate that the First Amendment applies to that conduct")(citing Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 82 L.Ed. 2d 221 (1984). Neither of the Ordinances at issue precludes the Plaintiffs from engaging in activities that can be considered "commercial speech."

Section 14-303 prohibits the use of coupons or multi-pack discounts which would make cigarettes or tobacco products available to purchasers at a reduced price. It does not, however, preclude licensed tobacco dealers from communicating pricing information to

-11-

their customers, nor does it regulate "what is said about prices." Pltfs.' Mem 11. As such, Section 14-303 regulates the commercial activity itself; it does not prohibit any communication regarding that activity. Moreover, nothing in Section 14-303 forbids the <u>dissemination</u> of coupons within the City, it only prohibits the <u>acceptance or redemption</u> of such coupons and the sale of tobacco products or cigarettes through multi-pack or bundled discounts. In other words, Section 14-303 is a means to control the price of cigarettes and tobacco products in Providence. Because it does so without implicating "commercial speech," First Amendment protection under the <u>Central Hudson</u> doctrine is not warranted under these circumstances.

Nor is the prohibition against coupon redemption or discount pricing "so inherently expressive" as to fall under the <u>O'Brien</u> analysis. <u>Wine and Spirits Retailers, Inc. v. Rhode Island</u>, 481 F.3d 1, 7 (1st Cir. 2007)(acknowledging applicability of <u>O'Brien</u> test to "expressive conduct"). The protection of the First Amendment is extended "only to conduct that is inherently expressive." <u>Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.</u>, 547 U.S. 47, 66, 126 S.Ct. 1297, 1311, 164 L.Ed.2d 156 (2006). While a prohibition of the dissemination of pricing information for cigarettes and tobacco products, <u>e.g.</u> via coupons, may fall within the expressive conduct category, a prohibition against the redemption of coupons or the sale of such products in multi-packs does not. Section 14-303, rather than limiting speech, only directly regulates the conduct with which the City is concerned.

-12-

See Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 586, 121 S.Ct. 2404, 2438, 150 L.Ed.2d 532 (2001) (suggesting alternative means for State to advance its interest in preventing access to tobacco products by minors). Moreover, the Plaintiffs, by insisting that Section 14-303 regulates commercial speech, appear to concede that "it is not a regulation of 'expressive conduct' under United States v. O'Brien." Pltfs. Reply 9 (Docket # 49).

The Plaintiffs' reliance on a "long line of cases that have applied Central Hudson to challenges to similar promotional offers" as those at issue in the instant case is misplaced. In Rockwood v. City of Burlington, Vt, 21 F.Supp.2d 411 (D.Vt. 1998), the Ordinance at issue - which primarily concerned tobacco advertising - prohibited "the distribution of free samples or coupons for the purposes of promoting tobacco products." Id. at 420. In Knapp v. Miller, 843 F.Supp. 633 (D. Nev. 1993) (related to a legal brothel business), the court determined that the "[p]laintiff's flyers providing three-for-one coupons and newspaper advertisements constitute commercial speech." Id. at 641. Wild West Gambling Hall & Brewery, Inc. v. City of Cripple Creek, 853 F.Supp. 371 (D. Colo. 1994) likewise dealt with the distribution of promotional materials, including coupons or, in this case, a free $1 token to promote casino gambling. In Discount Tobacco City & Lottery v. United States, 674 F.3d 509 (6th Cir. 2012), the Sixth Circuit undertook a Central Hudson analysis after determining that the challenged ordinance - which prohibited the distribution of free samples of tobacco products and other gifts or promotional

-13-

materials - attempted "to regulate the 'communicative impact' of the activity, not the activity itself." Id. at 539. The Court then proceeded to uphold the restrictions, with the exception of the distribution of free gifts with a tobacco purchase.

In the cases cited by the Plaintiffs, the ordinances in question all prohibited the distribution of promotional materials. Section 14-303, however, does not prohibit the distribution of coupons or the dissemination of pricing information - it prohibits the redemption of such coupons and the sale of cigarettes or tobacco products through multi-pack discounts. Therefore, the prohibited activity constitutes neither commercial speech nor expressive conduct and is not subject to First Amendment protection under either the Central Hudson or the O'Brien standard. See 44 Liquormart, Inc. v. Rhode Island, 517 U.S. at 499, 116 S.Ct. at 1506 (noting the distinction between "'the right to speak and hear expression about goods and services and the right of government to regulate the sales of such goods and services.'") (internal citation omitted).

Although the term "offer" in Section 14-303 appears to indicate that the prohibition extends to some manner of communication, a closer reading reveals that the provision only precludes licensed tobacco retailers from offering what the Ordinance explicitly forbids them to do: to accept or redeem coupons in Providence. As the City acknowledges, Section 14-303 does not preclude the Plaintiffs from distributing coupons, multi-pack offers or other price discounting information in Providence,

-14-

see City Mem. 31 (Section 14-303 "in no way affects the ability of the Plaintiffs. . . to continue to disseminate price reduction instruments and multi-pack offers in Providence.") Instead, the provision prohibits the redemption of coupons and the sale of cigarettes and tobacco products in multi-pack form in Providence only.

Moreover, it is well established that commercial speech which concerns unlawful activity or is misleading, is not subject to First Amendment protection and may be freely regulated by the government. Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-624, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)(citing Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. at 563-564, 100 S.Ct. at 2350). Therefore, although the dissemination of coupons and multi-pack pricing information for use elsewhere is allowed under the Price Ordinance, the redemption of coupons and sale of multi-packs in Providence is prohibited and no constitutional protection is applicable to the offer of redeeming such coupons or selling multi-packs in Providence.

In sum, because Section 14-303 does not involve commercial speech or expressive conduct, its prohibition against certain coupon discount and other price reduction practices does not conflict with the Plaintiffs' exercise of their First Amendment rights.

With respect to the prohibition against the sale of flavored tobacco products (except in a smoking bar), the operative provision of the Flavor Ordinance, Section 14-309, is also directed at

-15-

economic conduct that qualifies neither as "commercial speech" nor "expressive conduct." The Plaintiffs' argument is focused on Section 14-308, which defines "characterizing flavor" and "flavored tobacco product." Specifically, the Plaintiffs assert that (1) the Flavor Ordinance "presumptively bans products based on what Plaintiffs *say* about them," Pltfs.'s Mem. 26 (emphasis in original); (2) the Flavor Ordinance "prohibits any reference to an open-ended, non-exclusive list of 'concepts' or 'tastes or aromas' to describe tobacco products," id. at 26; and (3) such references render the Flavor Ordinance "unconstitutionally vague." Id. at 29-30.

With respect to the first contention, the case offered by the Plaintiffs in support is distinguishable. In Virgina v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), the Supreme Court upheld a Virginia statute which banned cross burning with intent to intimidate. However, the Court deemed unconstitutional a provision of the statute which provided that "[a]ny such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons." Id. 538 U.S. at 364. The holding of the Court was based the Commonwealth's adoption of a model jury instruction which stated that "[t]he burning of a cross, by itself, is sufficient evidence from which you may infer the required intent." Id. ("The prima facie evidence provision, as interpreted by the jury instruction, renders the statute unconstitutional.") Because the provision permitted the Commonwealth to "arrest, prosecute, and convict a person based solely on the fact of cross burning itself,"

-16-

it allowed for the possibility that a person could be convicted for engaging in core political speech, without any intent of intimidation. Id. at 365.

Section 14-309, which prohibits the sale of flavored tobacco products, except in a smoking bar, offers no possibility for creating "an unacceptable risk of the suppression of ideas." Virginia v. Black, 538 U.S. at 365. It is an economic regulation of the sale of a particular product and, as such, it involves neither commercial speech nor expressive conduct. The inclusion of a "public claim or statement made by the manufacturer" to determine whether the described product falls under the definition of a "flavored tobacco product" in Section 14-308 does not amount to a prohibition against speech. The sale of flavored tobacco products in Providence (outside a smoking bar) constitutes a violation of Section 14-309, regardless of whether it is specifically described as a flavored tobacco product or not. In other words, the Plaintiffs are free to describe their products as having or producing a characterizing flavor; they are, however, precluded from selling flavored tobacco products in Providence (with the exception of tobacco bars).

The definition of "characterizing flavor" also contains no explicit or implied prohibition against statements regarding the Plaintiffs' tobacco products; it merely serves to explain which tobacco products fall under the prohibition of Section 14-309. It also expressly exempts tobacco products with the distinguishable "taste or aroma of tobacco, menthol, mint or wintergreen," the sale

-17-

of which is permissible under Section 14-309.

However, with respect to "concepts such as spicy, arctic, ice, cool, warm, hot mellow, fresh and breeze," the Court is of the opinion that the inclusion of this phrase serves to confuse rather than clarify the definition. Not only is it unexplained how a concept[7] can relate to a tobacco product but, as the Plaintiffs correctly point out, it is at least conceivable that terms such as "arctic, ice, cool, and fresh" could be interpreted to include tobacco products flavored with menthol, mint or wintergreen, which are specifically excepted from the sales prohibition of Section 14-309. Therefore, in order to keep the Section 14-309 ban against the sale of flavored tobacco products intact, the provision "and concepts such as spicy, arctic, ice, cool, warm, hot, mellow, fresh, and breeze" shall be stricken from Section 14-308. See Section 14-307.

Because neither the Price Ordinance nor the Flavor Ordinance conflicts with the Plaintiffs' First Amendment Rights, the Ordinances are subject to a rational basis standard of review, which examines only whether "the means chosen by the legislature are rationally related to some legitimate government purpose." Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 53 (1st Cir. 2005). To meet that standard, the City must "articulate some 'conceivable set of facts' that could establish a rational

---

[7]    One dictionary definition of "concept" is "something conceived in the mind: THOUGHT, IDEA, NOTION." Webster's Third New International Dictionary 469 (2002).

relationship between the challenged laws and the government's legitimate ends," <u>Kittery Motorcycle, Inc. v. Rowe</u>, 320 F.3d 42, 47 (1st Cir. 2003), which requires no evidentiary record. <u>See e.g.</u>, <u>F.C.C. v. Beach Commc'ns</u>, 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993) (noting that "a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data.")

The City has submitted several affidavits in support of its motion for summary judgment. Professor Frank J. Chaloupka, Ph.D., a specialist in the field of health economics, asserts that Section 14-303 will reduce the use of tobacco, particularly among young people, by banning the redemption of coupons and the use of multi-packs, which have "a larger impact on use among young people, given their greater price sensitivity." Chaloupka Aff. 38 (Docket # 44-3). Professor Gregory N. Connolly, D.M.D., M.P.H., who has published more than 100 scientific articles on tobacco use and health, states that Section 14-309, which restricts the sale of flavored tobacco products to smoking bars, would "substantially reduce the sale of flavored tobacco products to underage consumers[8] and would reduce the attractiveness of these products to underage consumers by removing them from sales counters frequented by adolescents." Connolly Aff. 18 (Docket # 44-4). Once the City has articulated the connection between its stated goal to reduce the

---

[8]

The Court notes that sale of tobacco products to any individual under eighteen(18) years of age is prohibited by Rhode Island law. R.I. Gen. Laws § 11-9-13.8 (1).

use of tobacco by underage consumers and young adults and the provisions contained in the Ordinances, the burden is on the Plaintiffs to show that "there exists no fairly conceivable set of facts that could ground a rational relationship" between the Ordinance provisions and the City's objective. Medeiros v. Vincent, 431 F.3d 25, 29 (1st Cir. 2005)(internal citation omitted). Although the Plaintiffs offer several declarations to support their allegation that the Ordinances interfere with their communications with adult customers, their submissions fail to demonstrate the absence of a rational basis. See Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 10 (1st Cir. 2011) (noting that rational basis review requires only that the legislating entity "could rationally have concluded" that the challenged regulation "*might* advance its legitimate interests")(emphasis in original).

### (B)   Federal Preemption

#### (1) Count II - Price Ordinance

Under the Supremacy Clause, constitutionally enacted federal law is supreme to state law. U.S. Const. Art.VI. Cl.2. State law may be preempted by federal law either expressly or by implication. New Hampshire Motor Transport Ass'n v. Rowe, 448 F.3d 66, 74 (1st Cir. 2006). To make a determination whether a particular state or local law is preempted, congressional intent is "the ultimate touchstone." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Although "the primary indicator of that intent is the text of the congressional act claimed to have preemptive effect . . . [t]he text of the

-20-

preemption provision must be viewed in context, with proper attention paid to the history, structure, and purpose of the legislative scheme in which it appears." Good v. Altria Grp., Inc., 501 F.3d 29, 34 (1st Cir. 2007).

Even in the presence of an express preemption clause, a court may consider the statute as a whole to determine whether "the scope of the statute indicates that Congress intended federal law to occupy the legislative field." Altria Grp., Inc. v. Good, 555 U.S. 70, 76-77, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008). Preemption is not indicated unless there is evidence of "a clear and manifest congressional purpose." Massachusetts v. Ass'n of Health Maintenance, 194 F.3d 176, 179 (1st Cir. 1999).

The Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq. (the "Labeling Act"), was enacted by Congress in 1965 in order to "establish a comprehensive Federal program to deal with cigarette labeling and advertising." 15 U.S.C. § 1331. The aim of the legislation was to inform the public about adverse health effects of cigarette smoking while, at the same time, ensuring that commerce and the national economy were "not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health." 15 U.S.C. § 1331; 23-34 94th Grocery Corp. V. New York City Bd. of Health, 685 F.3d 174, 177 (2d Cir. 2012).

Subsection 1334(b), which addresses preemption of state regulations regarding the labeling, advertising, and promotion of cigarettes, provides:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter. 15 U.S.C. § 1334(b).

In 2009, Congress enacted the Family Smoking Prevention and Tobacco Control Act ("FSPTCA"), Pub. L. No. 111-31, 123 Stat. 1776 (2009), which added an exclusionary provision applicable to subsection 1334(b). The newly added subsection 1334(c) provides:

Notwithstanding subsection (b), a State or locality may enact statutes and promulgate regulations, based on smoking and health, that take effect after the effective date of the Family Smoking Prevention and Tobacco Control Act, imposing specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes. 15 U.S.C. § 1334(c).

The Plaintiffs argue that Section 14-303 is expressly preempted under the Labeling Act because the Labeling Act forbids states and localities from establishing a "requirement or prohibition" that is "based on smoking and health" and "with respect to the advertising or promotion of any cigarettes.[9]" Pltfs.' Mem 1-2, 17-22. Specifically, the Plaintiffs argue that Section 1334(b) of the Labeling Act precludes the City from enacting and enforcing Section 14-303, which the Plaintiffs characterize as a "wholesale attack on cigarette promotion." Pltfs.' Mem. 18. The Plaintiffs also suggest that, since coupons are defined in terms of "promotional purposes" in Section 14-300,

---

[9]

The Labeling Act applies to cigarettes only; it does not apply to cigars or other tobacco products.

the prohibition in Section 14-303 is preempted. Id. at 19.   The

Plaintiffs maintain that the Price Ordinance is directed at the

content of pricing information communicated to adult consumers and

that it bans discounts in forms of coupons and multi-packs because

such discount offers have "the content of offering a reduced unit

price." Id. at 20. In response, the City asserts that Section 14-

303 is not preempted by the Labeling Act because it "does not

concern itself with the content of advertisements or of promotional

materials." City Mem. 51.

Section 14-303 imposes no additional requirements on labeling

or advertising of cigarettes or the content of other promotional

materials, including coupons or special pricing offers. Even

accepting the Plaintiffs' argument that coupons are a form of

promotion, Section 14-303 does not regulate the content of such

coupons, nor does it preclude the Plaintiffs from disseminating the

coupons within the City, whether for promotional purposes or

otherwise; instead, it only prohibits the redemption of coupons.

Likewise, Section 14-303 does not regulate the information provided

on cigarette packaging, it only prohibits the sale of cigarettes

through multi-pack discounts or the distribution of cigarettes for

less than the listed price in exchange for the purchase of other

cigarettes.

Although the Plaintiffs assert that "[e]very federal court to

consider the question has . . . recognized" that "the offering

acceptance, and redemption of coupons are core promotional

activities under the Labeling Act," the cases to which they cite

-23-

precede the exclusionary provision of Section 1334(c). Pltfs.' Mem. 19 (citing <u>Jones v. Vilsack</u>, 272 F.3d 1030 (8th Cir. 2001) and <u>Rockwood v. City of Burlington</u>, 21 F.Supp.2d 411 (D.Vt.1998). Section 1334(c), however, explicitly permits states and localities to impose "specific bans or restrictions on the time, place, and manner but not content, of the advertising or promotion of any cigarettes." Nothing in the prohibition against coupon redemption or multi-pack sales set forth in Section 14-303 imposes "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health." Rather than controlling the content of promotional or advertising materials, Section 14-303 regulates the "time, place, and manner" of how cigarettes may be purchased in the City of Providence. As such, the Ordinance falls into the category of conduct specifically excluded from preemption by Subsection 1334(c) and provides no conflict with the intended purpose of the Labeling Act regarding uniform cigarette labeling and advertising.

### (2) Count IX - Flavor Ordinance

With respect to the Flavor Ordinance, the Plaintiffs argue that it is preempted by the FSPTCA because the Ordinance attempts to establish local requirements that are "different from" and "in addition to" federal requirements related to tobacco product standards and tobacco product labeling. While the FSPTCA only prohibits cigarettes that contain artificial or natural flavors (other than menthol), it does not apply to smokeless tobacco or other non-cigarette tobacco products. The Plaintiffs suggest that

Section 14-309 impermissibly extends the scope of the federal flavor standards to such non-cigarette products. Pltfs.' Mem. 31-32. Further, the Plaintiffs point out that the FSPTCA only applies to cigarettes that "contain, as a constituent . . . or additive" an ingredient that imparts a "characterizing flavor," whereas Section 14-309 "presumptively applies to any tobacco product publicly described as containing a "characterizing flavor." Id. at 32-33.

On its part, the City argues that the Plaintiffs' reliance on the FSPTCA's preemption clause fails to take into consideration that the FSPTCA also includes a savings clause and a preservation clause, which, together "create the balance of power between the state and federal governments." City's Mem. 56-57.

The stated purpose of the FSPTCA is "to provide authority to the FDA to regulate tobacco products, in order to 'address issues of particular concern to public health officials, including the use of tobacco by young people and dependence on tobacco." Pub.L. No. 111-31, § 3(2). Discount Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509, 520 (6th Cir. 2012). The FSPTCA authorizes the FDA to "regulate the sale, distribution, advertising, promotion and use of tobacco products," although it prohibits a complete ban on a class of nicotine products. Id.; U.S. Smokeless Tobacco Mfg. Co., LLC v. City of New York, 703 F. Supp.2d 329, 336-337 (S.D.N.Y. 2010)(noting that the FSPTCA "responds, at least in part" to the holding in Lorillard Tobacco v. Reilly, 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001), in which the Court held, *inter alia*, that the Labeling Act preempted a state law regulating outdoor

-25-

cigarette advertising aimed at reducing tobacco consumption by minors).

With respect to cigarettes only, the FSPTCA prohibits the use of "characterizing flavors" other than tobacco or menthol. 21 U.S.C. § 387g.[10]

Section 387p(a)(1) of the FSPTCA provides:

> Except as provided in paragraph (2)(A), nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit the authority of a Federal agency (including the Armed Forces), a State or political subdivision of a State, or the government of an Indian tribe to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products <u>that is in addition to, or more stringent than, requirements established under this subchapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age,</u> information reporting to the State, or measures relating to fire safety standards for tobacco products. No provision of this subchapter shall limit or otherwise affect any State, tribal, or local taxation of tobacco products.   21   U.S.C. §387p(a)(1)(emphasis added).

In a recent decision by the United States District Court of the Southern District of New York analyzing a local statute nearly identical to the challenged definition of the Flavor Ordinance in

---

[10] Subsection 387g(a) provides, *inter alia*, that "a cigarette or any of its component parts (including the tobacco, filter, or paper) shall not contain, as a constituent (including a smoke constituent) or additive, an artificial or natural flavor (other than tobacco or menthol) or an herb or spice, including strawberry, grape, orange, clove, cinnamon, pineapple, vanilla, coconut, licorice, cocoa, chocolate, cherry, or coffee, that is a characterizing flavor of the tobacco product or tobacco smoke." 21 U.S.C. § 387g (a).

this case, the court concluded that the FSPTCA allows a state or locality to impose its own, more restrictive, regulations on the sale of tobacco products. <u>U.S. Smokeless Tobacco Mfg. Co., LLC v. City of New York</u>, 703 F.Supp.2d at 340.

Although the FSPTCA contains a preemption provision prohibiting state and local governments to adopt its own "tobacco product standards," that provision is followed, and limited by, a further exclusionary provision.

Section 387p(a)(2)(A) provides:

> No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

As such, the FSPTCA preemption provision relates to tobacco product standards, not the sale and/or distribution of tobacco products prohibited by Section 14-309 of the Flavor Ordinance. Moreover, while the setting of tobacco product standards remains in the exclusive domain of the federal government, the additional exclusionary provision of subsection 387p(a)(2)(B) reaffirms that state or local regulations related to the sale and/or distribution of tobacco products are not preempted by the FSPTCA:

Section 387p(a)(2)(B) provides, in pertinent part:

> Subparagraph (A) does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety

standards for tobacco products.

When considered together, along with the FSPTCA's explicit ban of flavored cigarettes but not of other flavored tobacco products, the three provisions of the FSPTCA constitute no impediment to the City's prohibition against the sale of flavored tobacco products. Furthermore, there is no conflict between the FSPTCA's ban on flavored cigarettes and Section 14-309, which bans the sale of tobacco products (with the exception of tobacco bars), not cigarettes.

**(C) Due Process Violations under the 14th Amendment and Civil Rights Deprivation under Section 1983 (Counts III, VIII and X)**

In their Complaint, the Plaintiffs asserted that by "enacting and threatening to enforce" the Ordinances, the City has "unlawfully and substantially deprived" them of rights secured by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Complaint 39 - 40, 48-49. However, those claims remained without evidentiary support or argument and they were not further addressed in the Plaintiffs' memoranda or at the August 22, 2012 hearing.

The Plaintiffs also claimed that Section 14-309 violated their due process rights because it contained "unconstitutionally vague prohibitions" and undefined terms, Complaint 44-45. Specifically, the Plaintiffs took exception to the "non-exhaustive list of 'tastes' and 'aromas' - i.e. a list 'including, but not limited to,' the enumerated flavors." Pltfs.' Mem. 29. As this Court previously determined herein, Section 14-309 constitutes a

-28-

prohibition against the sale of flavored tobacco products (outside of a smoking bar), which does not infringe on "commercial speech" or "expressive conduct." See supra. Therefore, the heightened scrutiny employed by the Supreme Court in Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)(holding that vagueness of content-based regulation of speech in criminal statute raised special First Amendment concerns because of its obvious chilling effect on free speech) is not applicable here. Instead, the question is whether the language of the statute is "'sufficiently specific to provide fair notice of what [it] proscribe[s].'" Kittery Motorcycle, Inc. v. Rowe, 320 F.3d at 50 (quoting Brasslett v. Cota, 761 F.2d 827, 838 (1st Cir. 1985)). The offense must be defined "'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" United States v. Lachman, 387 F.3d 42, 57 (1st Cir. 2004)(quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). As stated by the First Circuit in Lachman, "[t]he mere fact that a statute or regulation requires interpretation does not render it unconstitutionally vague," particularly where "the statute deals with economic regulation and is addressed to sophisticated businessmen and corporations." United States v. Lachman, 387 F.3d at 57.

The definition of "characterizing flavor" in Section 14-308 states that it includes, but is not limited to, "tastes and aromas relating to any fruit, chocolate, vanilla, honey, candy, cocoa,

-29-

dessert, alcoholic beverage, herb or spice."[11] As such, it is closely modeled after the FSPTCA provision prohibiting the sale of flavored cigarettes. Subsection 387g(a) of the FSPTCA lists a number of possible flavors that are prohibited, but explicitly preserves the FDA's authority to take action with respect to "any artificial or natural flavor, herb, or spice not specified in this subparagraph." 21 U.S.C. § 387g (a)(1)(A). The fact that a statute includes a "non-exhaustive list" of examples does not render the statute vague. Rather, "[t]he existence of clear examples of conduct covered by law may, in certain circumstances, help to insulate the law against an accusation of vagueness." URI Student Senate v. Town of Narragansett, 631 F.3d 1, 14 (1st Cir. 2011)(upholding statute furnishing "a non-exhaustive list of predicate offenses" that will allow a police officer to enforce the ordinance at issue).

Moreover, the Plaintiffs' suggestion that, pursuant to Section 14-309, the ban of flavored tobacco product sales could arguably apply to "tobacco, menthol, or mint flavored" products is expressly foreclosed by the exclusion of those flavors in the Section 14-308 definition of "characterizing flavor."

In sum, the Court is of the opinion that Section 14-309 of the Flavor Ordinance prohibiting the sale (outside of a tobacco bar) of

---

[11]

Because the Court concluded that the inclusion of "concepts" in Section 14-308 confused, rather than clarified, the definition of "characterizing flavor," that portion of Section 14-308 was ordered stricken. See supra.

flavored tobacco products as defined by Section 14-308 is not unconstitutionally vague.

### (D) Violation of the Rhode Island Constitution

#### (Counts IV and XI)

This particular challenge of the Price and the Flavor Ordinances is based on the Plaintiffs' contention that the two Ordinances are "predicated on the City of Providence's unauthorized tobacco retailer licensing scheme." Pltfs.' Mem. 23, 40-41. In the event of any violation under either provision, Section 14-310 provides that a "tobacco dealer's license holder" will be subject to a range of civil fines based on the number of offenses. In addition, the City's Licensing Board "may suspend or revoke the license." Section 14-310.

The Plaintiffs, although they have not brought a direct challenge against the City's requirement of a tobacco dealer's license for selling tobacco products within the City, generally allege that Rhode Island has a "comprehensive, statewide tobacco retailer licensing law" and that the General Assembly "has not delegated authority to Providence or any other municipality to enact laws requiring local tobacco licenses." Pltfs.' Mem. 23.

In response, the City argues that (1) the Ordinances do not depend on the validity of the license requirement in Section 14-301, City's Mem. 66; (2) there is no exclusive constitutional delegation of power to the Rhode Island General Assembly with respect to all licensing, id. at 67; and (3) the provisions in the Ordinances referencing local licensing can be severed while

-31-

upholding the remaining substantive provisions. Id. at 70.  The City also points out that two other Rhode Island municipalities have enacted ordinances requiring licenses for sellers or distributors of tobacco products. Id. 69 n. 59.

At the August 22, 2012 hearing, the Plaintiffs candidly acknowledged that they had not challenged the City's licensing requirements directly. Nevertheless, the Plaintiffs suggested that the City's licensing ordinance was "clearly unconstitutional," and that Rhode Island not only prohibits the requirement of licenses by municipalities but also the regulation of businesses through a licensing scheme.

The Plaintiffs' challenge of the two Ordinances with respect to the Rhode Island Constitution is based solely on their contention that the Ordinances are part of, and depend on, a licensing scheme which, while not challenged in this case, the Plaintiffs ask this Court to deem unconstitutional. In other words, the question of whether the licensing requirement set forth in Section 14-301 of the Tobacco Dealers Ordinance is an unauthorized overreaching by the City is not before the Court. With respect to the Price and the Flavor Ordinance, licensing is implicated only if a violation occurs. The Ordinances have not yet been enforced and no suspension or revocation of a license has yet occurred in connection with an alleged violation of either Ordinance. Under those circumstances, it would be improper for this Court to determine the constitutionality of the City's licensing requirement and issue what amounts to an advisory opinion. For that reason,

Counts IV and XI are dismissed.

**(E)   Preemption under Rhode Island Law (Count V)**

Next, the Plaintiffs suggest that Section 14-303 is preempted by Rhode Island law because of the State's extensive regulation of tobacco coupons and discount offers. Pltfs.' Mem. 24.  The City, on its part, asserts that none of the referenced provisions in Rhode Island statutes conflict with Section 14-303 in any way, nor do the state law provisions indicate an intent to preempt the field. City Mem. 62-63.

For their argument, the Plaintiffs primarily rely on three provisions of Rhode Island law, two of which are criminal statutes related to the sale or distribution of tobacco products to minors, and a third  provision which generally relates to product pricing. Sections  11-9-13.8  and  11-913.10[12]  prohibit  selling  tobacco  to underage persons; distributing free tobacco products or coupons or

---

[12]

Section 11-9-13.8 prohibits the sale of tobacco products (1) to any individual under 18; (2) in any form other than an original factory-wrapped package; or (3) the sale of single cigarettes, or "loosies." R.I. Gen. Laws § 11-9-13.8.

Section 11-9-13.10, in pertinent part, provides:
    The distribution of free tobacco products or coupons or vouchers redeemable for free tobacco products to any person under eighteen (18) years of age shall be prohibited. Further, the distribution of free tobacco products or coupons or vouchers redeemable for free tobacco products shall be prohibited, regardless of the age of the person to whom the products, coupons, or vouchers are distributed, within five hundred (500) feet of any school. R.I. Gen. Laws § 11-9-13.10.

vouchers redeemable for free tobacco products to underage persons;
and distributing such products or coupons/vouchers to any person
within 500 feet of any school. Section 6-13-11[13], Rhode Island's
Unfair Sales Practices Act, regulates how businesses can utilize
price discounts and other promotions. Id. at 25. Tobacco dealers in
violation of the unfair sales practices act are subject to
suspension or revocation of their license to sell tobacco products.
R.I. Gen. Laws § 44-20-8.

    In addition, the Plaintiffs point out that the General
Assembly has repeatedly considered - and declined - to further
regulate the use of discounts and coupons for the sale of tobacco
products. Id. at 25-26. The Plaintiffs allege that Section 14-303
"conflicts with the General Assembly's repeated determination not
to further regulate the use of discounts and coupons for the sale
of tobacco products." Pltfs.' Mem. 25, referencing proposed
legislation restricting the sale of tobacco products in Note 12.

    A municipal ordinance is preempted by state law when it is

---

[13]

(3) Section 6-13-11 provides:
It shall be unlawful to use, communicate, or publish any
advertisement that states that an item or product is
being sold or offered for sale at below the regular price
or at a percentage off the regular price without posting
the regular price at the point of purchase. Whenever an
item or product is advertised for sale at below the
regular price or at a percentage off the regular price,
the advertisement shall clearly state whether there is an
additional charge for equipment or services which are
reasonably necessary for the proper use of the product.
Any person, firm, or corporation who shall violate the
provisions of this section shall be punished by a fine of
not more than five hundred dollars ($500).

determined that "'the General Assembly intended that its statutory scheme completely occupy the field of regulation on a particular subject.'" State ex rel. City of Providence v. Auger, 44 A.3d 1218, 1230 (R.I. 2012) (quoting Grasso Serv. Ctr., Inc. v. Sepe, 962 A.2d 1283, 1289 (R.I. 2009)). In considering field preemption, the Court must determine whether "it was the *expressed intent* of the General Assembly that 'the state control is to be exclusive or whether the control is to be exercised concurrently by the state and by the municipality.'" Auger, 44 A.3d at 1230 (quoting Wood v. Peckham, 80 R.I. 479, 483, 98 A.2d 669, 671 (1953) (emphasis in Auger)).

Sections 11-9-13.8 and 11-9-13-10, to which the Plaintiffs refer, are provisions in Rhode Island's criminal statutes which address offenses against children. As such, the provisions primarily concern conduct deemed to endanger the safety, health, or well-being of minors under the age of 18. Neither of the two state law sections prohibiting the sale or free distribution of tobacco products to minors contains an express reservation of power over the regulation of the distribution of tobacco products. Moreover, as noted in Amico's, "there is no indication that the General Assembly even impliedly intended to occupy the field of regulating smoking." Amico's, 789 A.2d at 907 (listing state statutes that demonstrate the Legislature's recognition of municipalities' authority to regulate smoking in certain areas). Finally, the Plaintiffs' reference to the General Assembly's apparent disinclination to enact measures similar to the provision in Section 14-303 is simply insufficient to support an inference that

-35-

the Legislature intended to preempt completely the regulation of tobacco product sales.

**(F)  Violation of the Open Meetings Act (Counts VI and XII)**

In their Complaint, the Plaintiffs allege that the Providence City Council's enactment of the Ordinances on January 5, 2012 was in violation of the Rhode Island Open Meetings Act, R.I. Gen. Laws § 42-46-6(b)[14] because the Council failed to provide supplemental written notice at least forty-eight hours prior to the meeting. Complaint 43, 50. According to the Plaintiffs, the Council first read and voted on the Ordinance on January 3, 2012. Pltfs.' Mem. 8. Although Rhode Island's Open Meetings Act requires forty-eight hours' notice, the Council only gave notice one day before the January 5, 2012 meeting, in the course of which the final vote and enactment of the Ordinances occurred. Id. 9. In response, the City asserts that any violations of the Open Meetings Act were cured when the Council approved the Ordinances a second time. Defs.' Mem. 6.

Upon questioning by the Court at the August 22, 2012 hearing on the parties' motions, Plaintiffs' counsel agreed that the Ordinances had been repassed but suggested that, by reenacting the Ordinance, the City had conceded that the Plaintiffs had stated a

---

[14]

R.I. Gen. Laws § 42-46-6(b) provides, in pertinent part, that "[p]ublic bodies shall give supplemental written public notice of any meeting within a minimum of forty-eight (48) hours before the date."

valid claim and that the City had acted to correct the error. Nevertheless, no further argument based on an alleged violation of the Open Meetings Act was made with respect to the reenacted Ordinances.  Because the Ordinances were properly reenacted with the requisite notice under R.I. Gen. Laws § 42-46-6(b), Counts VI and XII are moot and will be dismissed.

**Conclusion**

The Plaintiffs' motion for summary judgment is DENIED. The City's motion for summary judgment is GRANTED. The provisions of Section 14-303 shall be modified consistent with this Memorandum and Order. The Plaintiffs' request for a preliminary injunction is DENIED. The Plaintiffs' request for a permanent injunction is DENIED and the Clerk is directed to enter judgment in favor of the Defendants.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

December 10, 2012


Appendix I

Sec. 14-300
Sec. 14-303

Appendix II

Sec. 14-308
Sec. 14-309
Sec. 14-310

Appendix I

**City of Providence**

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

—————◆—————

## CHAPTER 2012-14

No. 133    An Ordinance AMENDING SECTION 14-300 AND
SECTION 14-303 OF ARTICLE XV OF CHAPTER 14 OF
THE CODE OF ORDINANCES OF THE CITY OF
PROVIDENCE, ENTITLED: "LICENSES - TOBACCO
DEALERS."

*Approved* February 20, 2012

*Be it ordained by the City of Providence:*

SECTION 1.   Section 14-300 of Article XV of Chapter 14 of the Code of Ordinances of
the City of Providence is hereby amended as follows:

**Sec. 14-300. Definitions.**

*"Board of Licenses"* shall mean the Providence Board of Licenses as established by Sec.

1102 of the Providence Home Rule Charter of 1980.

*"Compliance check violation"* shall mean any sale of tobacco products to a person who is

less than eighteen (18) years of age.

*"Coupon"* shall mean any card, paper, note, form, statement, ticket or other issue

distributed for commercial or promotional purposes to be later surrendered by the bearer

so as to receive an article, service or accommodation without charge or at a discount

price.

*"Listed or non-discounted price"* shall mean the higher of the price listed for a tobacco

product on its package or the price listed on any related shelving, posting, advertising or

display at the place where the tobacco product is sold or offered for sale plus all

applicable taxes if such taxes are not included in the stated price, and before the

application of any discounts or coupons.

*"Cigarette"* means  any product that contains nicotine, is intended to be burned or heated

under ordinary conditions of use, and consists of or contains: (1) any roll of tobacco

wrapped in paper or in any substance not containing tobacco; (2) tobacco, in any form,

that is functional in the product, which, because of its appearance, the type of tobacco

used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by,

consumers as a cigarette; or (3) any roll of tobacco wrapped in any substance containing

tobacco which, because of its appearance, the type of tobacco used in the filler, or its    Page   2

packaging and labeling, is likely to be offered to or purchased by, consumers as a

cigarette described in clause (1) of this definition.

*"Tobacco products"* shall mean any substance containing tobacco leaf, including, but not

limited to cigarettes, cigars, pipe tobacco, snuff, chewing tobacco, dipping tobacco, orbs,

sticks, ~~and~~ dissolvable tobacco products, and electronic cigarette cartridges; provided,

however, that "tobacco products" shall not include any product that has been approved by

the United States Food and Drug Administration for use as a medical treatment to reduce

and eliminate nicotine or tobacco dependence.

*"Vending machines"* shall mean any mechanical, electric or electronic self service device

which, upon insertion of money, tokens, or any other form of payment, dispenses tobacco

products.

SECTION 2.   Section 14-303 of Article XV of Chapter 14 of the Code of Ordinances of
the City of Providence is hereby amended as follows:

**Sec. 14-303.  Prohibitions applicable to license holders, their employees and agents.**

A person who holds a license issued under this article, or any employee or agent

of same, is prohibited from selling, distributing, delivering, offering for sale, or giving

away, or possessing with the intention of selling, distributing, delivering, offering for

sale, or giving away tobacco products within the city to any individual that is under

eighteen (18) years of age, whether said tobacco is sold, distributed or delivered in person

or via vending machine.

A person who holds a license issued under this article, or any employee or agent

of same, is prohibited from selling as a single cigarette sale, or as a sale of cigarettes by

the individual piece, known as "loosies."

No person who holds a license issued under this article, nor any employee or

agent of same, shall:

(1)  accept or redeem, offer to accept or redeem, or cause or hire any person to

accept or redeem or offer to accept or redeem any coupon that provides any

tobacco products without charge or for less than the listed or non-discounted

price; or

2

Page 3

(2) accept or redeem, offer to accept or redeem, or cause or hire any person to

accept or redeem or offer to accept or redeem any coupon that provides any

cigarettes without charge or for less than the listed or non-discounted price; or

(3) sell tobacco products to consumers through any multi-pack discounts (e.g.,

"buy-two-get-one-free") or otherwise provide or distribute to consumers any

tobacco products without charge or for less than the listed or non-discounted price

in exchange for the purchase of any other tobacco product; or

(4) sell cigarettes to consumers through any multi-pack discounts (e.g., "buy-two-

get-one-free") or otherwise provide or distribute to consumers any cigarette

without charge or for less than the listed or non-discounted price in exchange for

the purchase of any other cigarette.

SECTION 3.   This Ordinance shall take effect March 1, 2012.

IN CITY COUNCIL
JAN 0 3 2012
FIRST READING
READ AND PASSED

IN CITY
COUNCIL
FEB 17 2012
FINAL READING
READ AND PASSED

PRESIDENT

ACTING CLERK

I HEREBY APPROVE.

Mayor

Date: 2/20/12

3

**Appendix II**

City of Providence
STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
————◇————

## CHAPTER 2012-13

No. 132        AN ORDINANCE  AMENDING ARTICLE XV OF CHAPTER
14 OF THE CODE OF ORDINANCES OF THE CITY OF
PROVIDENCE, ENTITLED: "LICENSES" BY ADDING
THERETO THE FOLLOWING SECTIONS.

*Approved* **February 20, 2012**
*Be it ordained by the City of Providence:*

SECTION 1.   Article XV of Chapter 14 of the Code of Ordinances of the City of
Providence is hereby amended by adding thereto the following:

Sec. 14-308.  Definitions.

Whenever used in this ordinance, the following terms shall be defined as follows:

"Cigarette" means any product that contains nicotine, is intended to be burned or

heated under ordinary conditions of use, and consists of or contains: (1) any roll of

tobacco wrapped in paper or in any substance not containing tobacco; (2) tobacco, in any

form, that is functional in the product, which, because of its appearance, the type of

tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or

purchased by, consumers as a cigarette; or (3) any roll of tobacco wrapped in any

substance containing tobacco which, because of its appearance, the type of tobacco used

in the filler, or its packaging and labeling, is likely to be offered to or purchased by

consumers as a cigarette described in clause (1) of this definition.

"Characterizing flavor" means a distinguishable taste or aroma, other than the

taste or aroma of tobacco, menthol, mint or wintergreen, imparted either prior to or

during consumption of a tobacco product or component part thereof, including, but not

limited to, tastes or aromas relating to any fruit, chocolate, vanilla, honey, candy, cocoa,

dessert, alcoholic beverage, herb or spice and concepts such as spicy, arctic, ice, cool,

warm, hot, mellow, fresh, and breeze; provided, however, that no tobacco product shall

be determined to have a characterizing flavor solely because of the use of additives or

flavorings or the provision of ingredient information.

Page   2

"Component part" means any element of a tobacco product, including, but not limited to, the tobacco, filter and paper, but not including any constituent.

"Constituent" means any ingredient, substance, chemical or compound, other than tobacco, water or reconstituted tobacco sheet, that is added by the manufacturer to a tobacco product during the processing, manufacture or packing of the tobacco product. Such term shall include a smoke constituent.

"Flavored tobacco product" means any tobacco product or any component part thereof that contains a constituent that imparts a characterizing flavor. A public statement or claim made or disseminated by the manufacturer of a tobacco product, or by any person authorized or permitted by the manufacturer to make or disseminate public statements concerning such tobacco product, that such tobacco product has or produces a characterizing flavor shall constitute presumptive evidence that the tobacco product is a flavored tobacco product.

"Person" means any natural person, partnership, firm, joint stock company, corporation, or employee thereof, or other legal entity.

"Smoke constituent" means any chemical or chemical compound in mainstream or sidestream tobacco smoke that either transfers from any component of the tobacco product to the smoke or that is formed by the combustion or heating of tobacco, additives or other component of the tobacco product.

"Smoking bar" has the meaning as such term is defined in Sec. 23-20.10-2(15) of the Rhode Island general laws.

"Tobacco product" means any product containing tobacco or nicotine, including but not limited to cigars, pipe tobacco, snuff, chewing tobacco, dipping tobacco, bidis, snus, dissolvable tobacco products, and electronic cigarette cartridges; provided, however, that such term shall not include: (1) cigarettes, including those cigarettes subject to the Special Rule for Cigarettes relating to characterizing flavors of the federal Family Smoking and Tobacco Prevention Act; and (2) any product that has been approved by the U.S. Food and Drug Administration, pursuant to its authority over drugs.

Sec. 14-309.  Sale of flavored tobacco products prohibited.                                       Page 3

It shall be unlawful for any person to sell or offer for sale any flavored tobacco

product to a consumer, except in a smoking bar.

Sec. 14-310.  Enforcement and penalties.

The Providence police department shall enforce the provisions of this ordinance.

If an alleged violation occurs, the Providence police department shall issue a citation that

will require the tobacco dealer's license holder to appear for a show cause hearing before

the Board of Licenses.  If, after a hearing, the Board finds that a violation has occurred,

the Board shall impose a civil fine of two hundred fifty dollars ($250.00) for the first

offense, three hundred fifty dollars ($350.00) for the second offense, and five hundred

dollars ($500.00) for any subsequent offense.  Additionally, the Board may suspend or

revoke the license.  If a holder of a tobacco dealer's license maintains said license for

thirty-six (36) consecutive months without a violation, any new violation will be treated

as a first offense.

It is the intent of this legislation that all fines collected by the City hereunder shall

be used by the Board of Licenses and the Police Department for the purpose of

conducting tobacco compliance checks.

SECTION 2.   This Ordinance shall take effect March 1, 2012.

IN CITY COUNCIL
JAN 0 3 2012
FIRST READING
READ AND PASS.

IN CITY
COUNCIL
FEB 17 2012
FINAL READING
READ AND PASSED

PRESIDENT

ACTING CLERK

I HEREBY APPROVE.

Mayor

Date: 2/20/12

3